# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| JOHN KAMPEN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:14-CV-132-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff John Kampen on April 21, 2014, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], filed on October 8, 2014. The Commissioner filed a response on January 16, 2015. Plaintiff filed a reply on February 9, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on May 10, 2011, alleging a disability onset date of June 7, 2006. His claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on October 12, 2012, and presided over by Administrative Law Judge (ALJ) George W. Reyes. Present at the hearing were Plaintiff, his attorney, and an impartial vocational expert.

On November 28, 2012, the ALJ issued a written decision denying Plaintiff's claims for disability benefits, making the following findings:

1.      The claimant last met the insured status requirements of the Social Security Act on March 31, 2012.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 7, 2006 through his date last insured of March 31, 2012.

3. Through the date last insured, the claimant had the following severe impairment: status post left compound ankle fracture.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform light work; cannot use ladders, ropes or scaffolds; can occasionally use ramps and stairs or a step stool to reach up; would need a sit/stand option such that he would need to exercise a sit/stand option every hour or so for 1-2 minutes, meaning that if the claimant is sitting down, he could then stand for 1-2 minutes and then sit back down, or *vice versa*; he can attend and concentrate for 2 hours, then needs to take the customary 10-15 minute break, can then attend and concentrate for 2 more hours, then needs to take the customary 30-60 minute lunch period, can then attend and concentrate for 2 more hours, then needs to take the customary 10-15 [*sic*] break, can then attend and concentrate for 2 more hours and that is the end of the workday; cannot perform work in fast-paced production environment, examples of a fast-paced environment at which the claimant could not work are the pace of a McDonald's restaurant at noontime, or the pace of the conveyor belt in the famous <u>I Love Lucy</u> episode where the chocolates are on the conveyor belt zooming by Ethel and Lucy.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born [in 1961] and was 51 years old, which is defined as closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 7, 2006, the alleged onset date, through March 31, 2012, the date last insured.

(AR 17-23). Plaintiff then sought review before the Agency's Appeals Council, which denied his request on February 26, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On April 21, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*

*v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's

residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits or, alternatively, remand for further proceedings. In support of the requested relief, Plaintiff argues: (1) the ALJ's assessment of Plaintiff's credibility relies on improper factors, (2) the ALJ did not develop a full and fair record, and (3) the ALJ's RFC determination contains reversible errors. The Court considers each argument in turn.

### A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

As an initial matter, Plaintiff attacks the ALJ's use of boilerplate language in the credibility determination. The Seventh Circuit Court of Appeals has often criticized this language. *See, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). But an ALJ's use of the boilerplate language does not amount to reversible error if he "otherwise points to information that justifies his credibility determination." *Pepper*, 712 F.3d at 367-68. Accordingly, the Court proceeds to consideration of the substance of the ALJ's analysis.

Plaintiff next argues that the ALJ made an impermissible independent medical determination by not citing to any medical evidence in support of his decision to discount Plaintiff's allegations of pain on the basis that Plaintiff did not have evidence of weight loss or muscular atrophy. The ALJ wrote:

> Two common side effects of prolonged and/or chronic pervasive pain are weight loss and diffuse atrophy or muscle wasting. There is no record of claimant having lost weight since the alleged date of disability onset. In fact, he reported a weight gain of approximately 40 pounds. There is also no record in any of the clinic notes regarding diffuse atrophy or muscle wasting. Although the claimant undoubtedly experiences some degree of pain, that pain has apparently not altered the use of muscles and joints to the extent that it has resulted in atrophy or muscle wasting.

(AR 20-21). Normally reluctant to describe an ALJ as "playing doctor," the Court cannot do otherwise in this instance. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (holding that the ALJ "succumbed to the temptation to play doctor" by making a medical prognosis no doctor opined to); *see also Engstrand v. Colvin*, 788 F.3d 655, 660-61 (7th Cir. 2015); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The ALJ made an independent medical determination in discounting the severity of Plaintiff's alleged pain without citation to any medical evidence, doctor's opinion, or authority. There is no indication in the record that Plaintiff should have experienced weight loss or diffuse muscle wasting. Nor is there any support for the ALJ's reasoning that the absence of both side effects negates the level of pain Plaintiff is experiencing. In short, the ALJ has not provided a logical bridge from the evidence cited to his conclusion.

Further, the ALJ failed to address, as SSR 96-7p requires, Plaintiff's testimony regarding the efforts he took in structuring his daily activities in order to minimize pain, which resulted in a decrease in activity. *See* SSR 96-7p at *8; (AR 40). The ALJ's unsupported speculation regarding weight loss, atrophy, and muscle wasting and the ALJ's failure to address Plaintiff's daily activities pursuant to SSR 96-7p are errors requiring remand.

8

Plaintiff also asserts error in the ALJ's consideration of Plaintiff's failure to report ankle pain to his otolaryngologist (an ear, nose, and throat specialist). The ALJ noted that Plaintiff reported the ankle pain in November 2011 to his primary care physician, and the ALJ also noted that in December 2011 Plaintiff did not report the pain to his otolaryngologist. The ALJ found this failure to report ankle pain to the otolaryngologist to be "revealing in terms of the claimant's pain allegations." (AR 20). Plaintiff contends that the ALJ provided no logical bridge connecting this failure to report to the credibility determination. Notably, the Commissioner does not argue that there is a logical connection, and instead only argues that if the ALJ was wrong, the error was harmless. The Court agrees with Plaintiff's uncontested assertion. That Plaintiff did not discuss ankle pain with an ear, nose, and throat specialist is not relevant to Plaintiff's credibility. *See Fuchs v. Astrue*, 873 F. Supp. 2d 959, 970-71 (N.D. Ill. 2012) (finding that the plaintiff's statement made to a kidney specialist that he was "doing well" was irrelevant to assessing the plaintiff's mental impairments); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("[T]here is no reason to expect a doctor asked about an eye problem, or a back pain, or an infection of the urinary tract to diagnose depression."). The ALJ erred by not providing a logical bridge from this evidence to his conclusion.

The Commissioner argues that the ALJ found that a number of factors undermined Plaintiff's credibility, several of these are not objected to by Plaintiff, and, thus, any errors the ALJ made in the credibility determination are harmless. Errors in the credibility determination are harmless only if "a contrary determination would have to be set aside as incredible" or if "the trier of fact says that he would have made the same determination even if the questioned circumstances had been different from what he thought them to be and he gives an adequate reason for that back-up position." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). As in *Allord*, the ALJ here did not say that the same determination would have been made absent the erroneous determinations. *Allord*, 455 F.3d at 821.

9

Consequently, a finding of harmless error is only appropriate if "a contrary determination would have to be set aside as incredible." *Id.* Here, a contrary determination would not be incredible. For example, the ALJ noted that "the claimant undoubtedly experiences some degree of pain," Plaintiff reported ankle pain in November 2011 to his primary care physician, and Plaintiff structures his daily activities to cope with pain. (AR 20-21). A finding that Plaintiff's allegations are credible would not have to be set aside. Accordingly, the errors are not harmless and require remand.

Finally, Plaintiff also finds fault with the ALJ finding Plaintiff not credible based on Plaintiff's failure to get assistance through the county health system to defray the cost of testosterone replacement, as recommended by Plaintiff's physician. Specifically, Plaintiff argues that the ALJ was required to ask for Plaintiff's explanation for failure to pursue this treatment before making a negative inference regarding credibility on this basis. The Court agrees that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain . . . failure to seek medical treatment." SSR 96-7p at *8; *see also Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (vacating when the ALJ failed to question the plaintiff about a gap in medical treatment and drew a negative inference from this treatment gap). The Commissioner argues that footnote 2 of the ALJ's decision indicates that no negative inference was made. *See* (AR 21). This footnote is not a model of clarity, and the Court has already determined that remand is necessary. Consequently, the Court need not decipher the meaning of this footnote and instead instructs the ALJ to inquire into and consider Plaintiff's reasons for not pursuing treatment before the ALJ makes any negative inference from the lack of treatment.

### B. Development of the Record

Plaintiff next argues that, in not ordering an updated x-ray of Plaintiff's ankle, the ALJ failed in his duty to develop a full and fair record. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). In 2006, Plaintiff fell and injured his leg, which resulted in surgery. Plaintiff testified under oath that his surgeon, Dr. Joseph Tansey, informed Plaintiff that Plaintiff would need to have additional surgery every two years to clean out debris from his ankle. (AR 20, 38). Plaintiff has not had any subsequent ankle surgeries, and the last x-ray of the ankle was taken in 2007. The ALJ noted Plaintiff's testimony and later found that Plaintiff's "pain and functional limitations are not fully corroborated by objective medical evidence." The ALJ did not explain how he evaluated this reported need for subsequent surgeries, including whether he found Plaintiff's testimony credible and, if so, how the ALJ evaluated the reported need for surgery in determining Plaintiff's RFC.

The reported need for periodic surgeries to clean out the wound indicates that the build up in the ankle will accumulate over time. As a result, the 2007 x-ray may not have been an accurate picture of the state of Plaintiff's ankle in 2012 when the ALJ made his decision. Plaintiff argues that *Smith* is similar to the instant case. The *Smith* court found that the ALJ failed to develop a full and fair record by not ordering a new x-ray of the plaintiff's knee, which was known to have a degenerative condition. 231 F.3d at 437-38.

The Commissioner argues that *Smith* is not applicable because the x-rays in that case were ten years old and the x-rays here are only five years old. The Commissioner further points out that the 2007 x-ray revealed no evidence of early ankle degeneration, no doctor chose to order additional x-rays, and physical therapy and examination notes indicated good functioning of Plaintiff's ankle. However, the ALJ cited to none of this evidence, so the Court will not consider it. The Commissioner cannot provide post hoc rationalization for the ALJ's decision. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014).

11

Instead, the Court finds that the potential accumulation of debris over time is analogous to the degenerative arthritis in *Smith*, and five years is adequate time for a potentially substantial change to have occurred regarding Plaintiff's ankle, especially in light of the surgeon's indication that surgery would be required every two years. This case is already being remanded on other grounds. On remand, the ALJ is directed to order an x-ray or other medical diagnostic technique to determine the state of Plaintiff's ankle. The ALJ is further directed to obtain a medical expert's opinion on the results of the diagnostic testing.

## C. RFC Determination

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may—when

12

considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id.*

The ALJ found that Plaintiff retained the RFC to perform work at the light exertional level but could not use ladders, ropes, or scaffolds and could only occasionally use ramps and stairs or a step stool to reach up. The ALJ further found that Plaintiff would need a "sit/stand option" such that if Plaintiff were sitting down for an hour, he would require a 1-2 minute break during which to stand, and, similarly, standing for an hour would require a 1-2 minute sitting break; that Plaintiff could attend and concentrate for 2 hour periods, after which a customary break would be needed; and that Plaintiff could not work in fast-paced production environments.

Plaintiff faults the ALJ for not relying on any opinion evidence in formulating the RFC after having given the state agency reviewing physician's opinion "appropriate weight" and not adopting it in whole. (AR 21). Plaintiff asserts that the ALJ must have made an independent medical assessment in determining the RFC because the ALJ did not adopt a medical opinion. However, an ALJ is not required to base the RFC determination solely on medical opinion evidence. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz*, 55 F.3d at 306, n.2) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians).

The state agency reviewing physician's opinion was that Plaintiff is capable of medium exertional work. The ALJ explained that he found Plaintiff more limited than the physician's opinion partially due to Plaintiff's weight gain and "a possible need to sit and stand during the workday pursuant to the claimant's testimony and to address work in a fast-paced production environment." (AR 22).

The Commissioner argues that the ALJ did not reject the consulting medical opinion because

13

a person found capable of performing medium work is impliedly capable of performing light work. 20 C.F.R. 404.1567(c). However, that person is also impliedly capable of performing sedentary work. *Id.* Accordingly, more evidentiary support of the ALJ's RFC determination is needed. The ALJ has provided this through citation to objective medical evidence, such as Plaintiff's full range of motion in the ankle except for minor limitations in dorsiflexion and flexion; the strength, muscle tone, and power of his ankle; the lack of edema in the ankle; and Plaintiff's normal gait at the consultative examination. (AR 20-21). The ALJ also considered Plaintiff's testimony, though, as found above, the credibility determination contains errors that require remand. On remand, the ALJ's RFC finding may change as a result of the new credibility determination. In the new finding of Plaintiff's RFC, the ALJ should once again consider medical opinion evidence, Plaintiff's testimony, and other evidence of record. From this evidence, the ALJ shall build a logical bridge to the RFC finding. The ALJ should also consider obtaining a new medical opinion regarding Plaintiff's functional limitations to include consideration of Plaintiff's obesity. Further, the Court reminds the ALJ of his duty to consider the combined effects of all of Plaintiff's impairments. *See Goins*, 764 F.3d at 681.

### D. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord*, 631 F.3d at 415 (citing *Briscoe*, 425 F.3d at 356). As is evident from the discussion above, remand, not an immediate award of benefits, is required here.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Brief in Support of His

Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 15th day of December, 2015.

                                              s/ Paul R. Cherry
                                              MAGISTRATE JUDGE PAUL R. CHERRY
                                              UNITED STATES DISTRICT COURT